1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL JAIMES BOHORQUEZ, *et al.*,

                    Petitioners,

     v.

LAURA HERMOSILLO, *et al.*,

                    Respondents.

Case No. C26-573-MLP

ORDER

14

15

16

17

18

19

20

21

22

23

       Through counsel, Petitioners Paul Jaimes Bohorquez, Maribel Mandujano Serrano, Harjit Singh, and Rongbiao Tang (together, "Petitioners") have filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging as unlawful their redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 1.) Respondents have filed a return (dkt. # 9), together with the supporting declarations of ICE Deportation Officer Rita Soraghan (dkt. # 10) and Respondents' counsel Lawrence Van Daley (dkt. # 11).[1] Having reviewed the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 1).[2]

---

[1] Petitioners' reply to the return is due March 10, 2026. (Dkt. # 6.) The Court finds habeas relief warranted and, accordingly, finds it unnecessary to wait for the reply.

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 7.)

ORDER - 1

## I.    BACKGROUND

Petitioner Paul Jaimes Bohorquez, a citizen of Venezuela, entered the United States without admission near Eagle Pass, Texas, on or about July 14, 2022, was apprehended, and later released in Seattle on an Order of Release on Recognizance ("OREC") requiring compliance with all laws and regular reporting. (Bohorquez Decl. (dkt. # 2), ¶¶ 1-2; Soraghan Decl., ¶¶ 4-7; Van Daley Decl., Exs. 1-2.) He filed for asylum, obtained work authorization, and attended immigration hearings. (Bohorquez Decl., ¶¶ 4, 6-7.) In August 2023, he was arrested following a car accident that he describes as a hit-and-run in which he was the victim and attempted to prevent the other driver from fleeing; he was unable to explain the situation in English at the scene, and the vehicular assault charge was later dismissed after his public defender explained the circumstances to the court. (*Id.*, ¶ 5; *see* dkt. # 1 at 7.) ICE did not redetain him at his January and March 2025 hearings, but on November 26, 2025, while he reported for a scheduled visit to the Seattle Enforcement and Removal Operations ("ERO") office, officers treated the 2023 arrest as a violation of his OREC, issued a warrant, and took him into custody, transferring him to NWIPC, where he remains with a final hearing set for March 6, 2026. (Bohorquez Decl., ¶¶ 8-9; Soraghan Decl., ¶¶ 8-10; Van Daley Decl., Exs. 3-4.)

Petitioner Maribel Mandujano Serrano, a citizen of Mexico, entered without admission near Eagle Pass, Texas, on or about December 20, 2023, was apprehended, and released the next day on an OREC with in-person and weekly phone reporting obligations, along with a Notice to Appear in Seattle Immigration Court. (Serrano Decl. (dkt. # 3), ¶¶ 1-2; Soraghan Decl., ¶¶ 12-14; Van Daley Decl., Exs. 5-7.) She relocated to Yakima, updated her address, timely filed an asylum application in May 2025, attended hearings in July and October 2025, and continued reporting via the Alternative to Detention ("ATD") program. (Serrano Decl., ¶¶ 3-4.) She states

that when her officer revised the timing rules for photo submissions in August 2025, she

followed the new instructions and remained in compliance. (*Id.*) ICE records, however, reflect

multiple missed in-person ATD and biometric appointments between June and November 2025,

which ERO treated as violations of her conditions. (Soraghan Decl., ¶ 16; Van Daley Decl., Ex.

8.) On January 7, 2026, she reported for a scheduled appointment at the Yakima ERO office, was

taken into custody based on those alleged violations, and transferred to NWIPC, where she

remains; she recalls being told at the time that she was "likely being detained in order to move

[her] case along faster." (Serrano Decl., ¶¶ 6-8; Soraghan Decl., ¶¶ 15-18; Van Daley Decl., Exs.

9-11.) She has no criminal history. (Serrano Decl., ¶ 7.)

Petitioner Harjit Singh, a citizen of India, entered without inspection near Bellingham,

Washington, on or about June 7, 2024, was apprehended and initially processed for expedited

removal, then referred for and passed a credible fear interview, after which his case was sent to

the Immigration Court. (Singh Decl. (dkt. # 4), ¶¶ 1-4; Soraghan Decl., ¶¶ 22-25; Van Daley

Decl., Ex. 12.) He was released on an OREC with GPS monitoring and ATD conditions.

(Soraghan Decl., ¶¶ 25-26; Van Daley Decl., Ex. 13.) Mr. Singh attests that he complied with his

conditions to the best of his knowledge, filing for asylum and participating in required reporting.

(Singh Decl., ¶¶ 5-6.) ICE records report several missed biometric check-ins in late 2024 and

early 2025 and an incident of device tampering in August 2024. (Soraghan Decl., ¶ 27; Van

Daley Decl., Ex. 15.) On July 26, 2025, he was arrested by a joint federal task force and

transferred to NWIPC, where he remains detained. (Singh Decl., ¶¶ 7-9; Soraghan Decl., ¶ 28;

Van Daley Decl., Ex. 14.) On November 7, 2025, an immigration judge found his testimony not

credible, denied his applications for relief, and ordered him removed to India; he has timely

appealed to the Board of Immigration Appeals and has no criminal history. (Singh Decl., ¶¶ 9-10; Soraghan Decl., ¶¶ 30-31; Van Daley Decl., Ex. 16.)

Petitioner Rongbiao Tang, a citizen of China, entered without admission near Tecate, California, on or about September 16, 2024, was apprehended by Customs and Border Protection, and released the following day on an OREC with GPS monitoring and weekly mobile check-ins, along with a Notice to Appear in Seattle Immigration Court. (Tang Decl. (dkt. # 5), ¶ 2; Soraghan Decl., ¶¶ 33-35; Van Daley Decl., Exs. 17-19.) After relocating to Washington, he retained counsel, filed an asylum application, obtained work authorization, and reported regularly, attending in-person ICE check-ins every few months and submitting three photos each Thursday morning via mobile application within the specified time window. (Tang Decl., ¶¶ 3-4.) He states he was never told of any problems with his compliance. (*Id.*) ICE records, by contrast, reflect multiple biometric mismatches and location-tracking issues between late 2024 and late 2025, as well as one missed check-in, which ERO classified as violations of his release conditions. (Soraghan Decl., ¶ 36; Van Daley Decl., Ex. 20.) On January 7, 2026, ICE revoked his OREC based on those alleged violations and transferred him to NWIPC, where he remains detained while his removal proceedings, including a master calendar hearing set for March 12, 2026, are pending. (Tang Decl., ¶¶ 5-7; Soraghan Decl., ¶¶ 37-39; Van Daley Decl., Exs. 21-22.)

On February 18, 2026, Petitioners filed this habeas petition, contending that their redetention without prior notice or a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment and seeking immediate release and prospective injunctive relief. (Dkt. # 1.)

## II.    LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v.*

1  *Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody

2  in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The

3  petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384

4  F.3d 628, 638 (9th Cir. 2004).

### III.     DISCUSSION

6  The material facts are not in dispute. Each Petitioner entered without inspection, was

7  served with a Notice to Appear, affirmatively released into the community on OREC and/or

8  ATD, lived under supervision while pursuing protection claims, and was later redetained by ICE

9  based on alleged violations of release conditions. None received prior written notice of the

10  alleged violations, nor a hearing before a neutral decisionmaker, before being taken back into

11  custody.

### A.     Due Process and the Scope of § 1225(b)

13  Respondents argue that all four Petitioners are "applicants for admission" subject to

14  mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that this classification ends the due

15  process inquiry. (Dkt. # 9 at 9-11.) They rely on the statutory definition in § 1225(a)(1), *Jennings*

16  *v. Rodriguez*, 583 U.S. 281 (2018), and the Fifth Circuit's decision in *Buenrostro-Mendez v.*

17  *Bondi*, 166 F.4th 494 (5th Cir. 2026), to contend that noncitizens who entered without admission

18  remain applicants for admission at all times and may be returned to mandatory § 1225(b) custody

19  whenever discretionary release is revoked. (Dkt. # 9 at 9-11.)

20  Respondents' reliance on § 1225(b)'s "mandatory" language and on *Buenrostro-Mendez*

21  to erase Petitioners liberty interest is unavailing. The Fifth Circuit's decision is nonbinding here,

22  and this Court joins others in declining to adopt Respondents' expansive construction of

23  § 1225(b)'s mandatory detention framework to include Petitioners. *See*, *e.g.*, *Rodriguez v.*

*Bostock*, 802 F. Supp. 3d 1297, 1324 (W.D. Wash. Sept. 30, 2025) (rejecting the Government's

position that § 1225(b) applies to all applicants for admission and declining to treat a

long-present noncitizen as subject to that scheme); *Singh v. Bondi*, 2026 WL 538414, at *2

(W.D. Wash. Feb. 26, 2026); *G.S. v. Hermosillo*, 2026 WL 179962, at *3 n.2 (W.D. Wash. Jan.

22, 2026); *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025).

##### B.    Due Process and the *Matthews* Framework

Due process protections extend to all persons within the United States, including

noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process

requires meaningful notice and a genuine opportunity to be heard before the government

infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In

immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing:

(1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures

and the value of additional safeguards; and (3) the government's countervailing interest,

including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07

(9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

Respondents emphasize that *Mathews* is "context-specific" and contend that Petitioners'

interest is diminished by their status as applicants for admission, that the risk of error is low

because ICE relied on "objective" internal records, and that requiring pre-revocation hearings

would impose undue burdens and conflict with § 1225(b)'s scheme. (Dkt. # 9 at 11-14.)

Applying *Mathews* here, all three factors favor Petitioners.

First, Petitioners' interest in remaining free from physical confinement after months or

years of release into the community under OREC and ATD is a substantial liberty interest. *See*

*Zadvydas*, 533 U.S. at 690; *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Each Petitioner lived under

government supervision, obtained work authorization, and pursued his or her immigration case while on release. That liberty interest is not extinguished by Respondents' characterization of them as "applicants for admission" or by the statutory label attached to their initial detention.

Second, ICE revoked Petitioners' release and redetained them at routine check-ins or at home with no advance written notice, no contemporaneous statement of new facts suggesting danger or flight risk, and no opportunity to contest redetention before a neutral decisionmaker. The alleged bases—an arrest that resulted in a dismissed charge, disputed ATD and biometric issues, and asserted device or location problems—were never tested in any adversarial process, despite Petitioners' prior compliance and, in some instances, ICE's decision to leave release in place for extended periods after the underlying events occurred. In these circumstances, the risk of erroneous deprivation is high, and a brief, neutral custody hearing would have significant value in testing the legal and factual basis for revocation. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

Third, although the Government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before revoking existing release would materially impede those interests, particularly given Petitioners' demonstrated compliance while on release. Custody hearings are already routine, and courts in this District have found the marginal administrative burden of such hearings modest and outweighed by the liberty interests at stake. *See Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1190 (W.D. Wash. 2025); *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

//

//

ORDER - 7

IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    The petition for writ of habeas corpus (dkt. # 1) is GRANTED;

(2)    Respondents shall immediately release Petitioners from immigration custody, subject to appropriate conditions of supervision consistent with existing statutory and regulatory authority;

(3)    Within **two (2) business days**, Respondents shall file a notice with the Court confirming Petitioners' release; and

(4)    Respondents shall not redetain Petitioners without prior written notice and a hearing before a neutral decision maker, unless Petitioners' redetention is expressly required by statute.

Dated this 6th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge